IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT E. GREEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 07 C 5696 |
| EAST AURORA SCHOOL DISTRICT NO. 131, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Robert Green has sued East Aurora School District No. 131, claiming age discrimination in violation of the Age Discrimination and Employment Act (ADEA), 29 U.S.C. § 623(a); race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); and retaliation in violation of Title VII, *Id.* at § 2000e-3(a). The District has moved for summary judgment on all of Green's claims. For the following reasons, the Court grants the District's motion in part and denies it in part.

### Facts

Because the District has moved for summary judgment, the Court views the facts in the light most favorable to Green and draws reasonable inferences in his favor. *See, e.g.*, *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

Green, who is African-American, was born in 1955. He is a certified teacher and began working as a physical education teacher and coach for the District in 1980. While working for the District, he coached football, boys' and girls' basketball, and track and field at the elementary, middle, and high school levels. Green completed courses such as sports first aid and principles of coaching while employed with the District.

The District compensates teachers for taking on "stipend" positions, which include coaching, in the form of a payment that is typically some fraction of the teacher's salary. Green stated that he earned as much as $2,000 per year for a stipend position.

In 1993, Green was assigned to Simmons Middle School, where he held a number of stipend positions. Green coached track and field from at least 2001 and continued to do so through 2005. He also coached boys' basketball during the 2003-2004 season and assistant-coached girls' basketball during the 2004-2005 season. Green was also assigned another stipend position, that of team leader, for 2003-2004. As team leader, he acted as a liaison between the administration and teachers on his team. In 2004, Randal Ellison, the principal at Simmons, removed Green from the team leader position. Ellison stated that he removed Green because he had missed eight of ten mandatory team leader meetings. Green contends that he was surprised at the removal because he had been team leader since 2002 without any complaints.

During the 2004-2005 school year, Jesus Barraza became the athletic director at Simmons. As athletic director, Barraza supervised the athletic programs and recommended teachers for coaching positions to Ellison. Ellison made the appointments based on Barraza's recommendations.

Just before the start of the 2005 track and field season, Barraza asked Green to resign as head coach.  Barraza stated that he told Green that he should resign because there had been several complaints about his coaching behavior.  According to Barraza, Green promised to improve his behavior.  Green contends that Barraza only mentioned that Green had failed to participate in two basketball-related events as the reason for requesting that he resign.  Barraza relented and allowed Green to remain as track and field coach for the season.

In April 2005, Green filed with the Equal Employment Opportunity Commission (EEOC) a charge of unlawful discrimination charge against the District.  Both Barraza and Ellison were aware that Green had filed the charge.

In the spring of 2005, Barraza asked teachers to inform him if they were interested in coaching during the next school year.  No specific vacancies were announced.  Shortly thereafter, Green left a note for Barraza stating "I am interested in coaching next year!" Def. Mot. at 10.  Barraza, however, did not recommend Green for any coaching positions for the 2005-2006 school year, and Ellison did not appoint Green to any such positions.

Barraza recommended several teachers for coaching positions that year.  He recommended Phil Lowe to be appointed girls' basketball coach.  Lowe, who is African-American, was twenty-five years old at the time.  Barraza recommended Joel Knobloch to be appointed track and field coach.  Knobloch, who is white, was twenty-eight years old at the time.  Barraza recommended Dave Hamilton, who is white, to be appointed football coach.  Ellison subsequently appointed each of these individuals to those coaching positions.

3

The District's policy requires that certified teachers be given a preference for coaching positions over non-certified teachers. Neither Lowe nor Hamilton was a certified teacher when Ellison appointed them. In addition, the District's policy stated that only teachers who had completed courses in sports first aid and coaching principles were eligible for coaching positions. Although Green had successfully completed both of those courses, none of the teachers appointed instead of Green had done so.

In the fall of 2005, Simmons' wrestling coach resigned just before the start of the season. Barraza sent out a district-wide e-mail soliciting applications for the position. He did not receive any applications. Barraza canceled the wrestling season, and no one was appointed wrestling coach.

Green contends that he wrote a second letter of interest to Barraza in September 2005, specifically requesting to be considered for positions of eighth grade girls' basketball coach, eighth grade boys' basketball coach, and head track coach. In October 2005, Barraza informed Green that he would not be coaching that year. When Green asked him why, Green contends that Barraza said that Green did not get along with co-workers whom Barraza did not identify. Green contends that Barraza did not inform him of any complaints about Green's coaching.

Barraza and Ellison stated that they received several complaints about Green's coaching. They stated that students and parents had complained about Green's "excessive yelling and harsh comments." Def. Mot. at 7. The District contends that it received complaints from other schools' coaches that Green failed to provide

4

assistance at track meets. Barraza stated in his deposition that he did not recommend Green as a result of these performance issues.

In January 2006, Green filed another discrimination charge with the EEOC.

On November 20, 2006, the District issued Green a notice to remedy. The notice was a formal disciplinary action, but it did not immediately affect Green's salary or position. In the notice, the District identified four separate incidents of allegedly inappropriate behavior that it alleged violated District policy. In May 2005, two female contractors complained that Green had asked inappropriate personal questions. On April 5, 2005, a student complained that Green had asked her if she was a virgin. On October 25, 2006, another student complained that Green grabbed him and pushed him from a classroom. On October 29, 2006, a teacher, identified as D.S., complained that Green had sexually harassed her. The notice to remedy ordered Green to remedy the allegedly unprofessional behavior or face discharge.

The District contends that each of the complaints was investigated and that each was found credible. Green contends that all the complaints were baseless and that some were contradicted by eyewitnesses.

Shortly afterwards, the District transferred Green to the position of in-school suspension teacher. In that position, Green was responsible for students assigned to in-school suspension. The District contends that it intended this move to minimize his contact with D.S. Green contends that his transfer did not minimize his contact with D.S. and that D.S. continued to speak with him after his transfer.

The District reassigned Green to a physical education teaching position at Cowherd Middle School for the 2007-2008 school year.

Green filed this suit on October 9, 2007, asserting three claims of discrimination in violation of the ADEA and Title VII. These include: (1) a claim of age discrimination for the District's failure to appoint him girls' basketball coach, track and field coach, and wrestling coach; (2) a claim of race discrimination for the District's failure to appoint him track and field coach, wrestling coach and football coach; and (3) a claim of retaliation for issuing him a notice to remedy, transferring him to the position of in-school suspension teacher, and failing to appoint him to a coaching position.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

1. **Age and race discrimination**

A plaintiff may prove a claim of age discrimination though either the direct or indirect methods of proof. *Horwitz v. Brd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 (7th Cir. 2001). Green has asserted his claim via the indirect method, using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411

6

U.S. 792, 802-04 (1973). Under this method of proof, he must first establish a prima facie case of discrimination by showing that: (1) he was at least forty years old; (2) he performed his job satisfactorily; (3) he suffered a materially adverse employment action; and (4) younger, similarly situated employees were treated more favorably. *Horwitz*, 260 F.3d at 610. If Green can make out a prima facie case of discrimination, the burden shifts to the District to articulate a legitimate, non-discriminatory reason for not appointing him to the coaching positions. *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). If it does so, then Green bears the burden of proving that the asserted reason is a pretext for unlawful discrimination. *Id.*

Green falls within the protected age group because he was over forty years old at all relevant times. 29 U.S.C. § 631(a). It is also undisputed that Green suffered an adverse employment action when he was not re-appointed to a coaching position.

The District argues that Green cannot make out a prima facie case because of his "history of poor performance and inappropriate conduct." Def. Mot. at 7. The District contends that Green's record of misconduct as a coach shows that he was not performing his job satisfactorily. Specifically, Barraza and Ellison both stated in affidavits submitted with the District's motion that they had received complaints about Green's coaching from students and parents when Green coached boys' and girls' basketball from 2003 to 2005. Although they did not offer specifics, both Barraza and Ellison stated in their affidavits that the complaints revolved around Green's "excessive yelling and harsh comments." Def. Ex. 3 & 5. Barraza further stated in his affidavit that Green had failed to attend a basketball clinic and a faculty basketball game and that Green "avoided assisting with events during track meets." Def. Ex. 5.

7

Green disputes the basis for his record of misconduct, contending that the District engineered complaints to cover for its discriminatory conduct. Green contends that he had coached for many years without complaints and that he was told of the alleged complaints only after he filed his EEOC charge. Green states that the basketball events that Barraza claims he missed were cancelled and that his failure to assist during track meets was the result of a temporary back injury of which Ellison was aware. Green also contends that any alleged issues with his performance emerged only after Barraza, who is younger than Green and Hispanic, became athletic director.

The competing statements of Barraza, Ellison, and Green give rise to a credibility dispute, which the Court cannot appropriately adjudicate on a motion for summary judgment. *See Hasan v. Foley & Lardner LLP*, --- F.3d --- , 2008 WL 5205818 at *8 (7th Cir. Dec. 15, 2008). Barraza and Ellison's statements about complaints by parents and students were identical, yet neither of them offered any specifics about when the complaints were made or who made them. A reasonable jury could find their statements to lack credibility. Green has shown that there is a genuine factual dispute as to his job performance, which precludes entry of summary judgment based on his claimed inability to make out the second element of his prima facie case.

The District contends that because the individuals who were appointed in Green's stead did not have records of misconduct similar to his, Green cannot show that a similarly situated employee outside the protected class was treated more favorably. Green contends that both Lowe and Knobloch are younger, similarly-situated employees who were treated more favorably because they were appointed to the positions of girls' basketball and track and field coach, respectively. Because there

exists a genuine dispute over Green's record of misconduct, the Court cannot say that there is no genuine issue of fact concerning whether those persons were similarly situated to Green.

The District contends that Green cannot establish a prima facie case with respect to the wrestling coach position for the additional reason that he did not apply for that position. Green submitted a letter to Barraza in April 2005, indicating his interest in coaching the following school year. The District contends that Green's letter was too vague to be considered an application and that he failed to respond to Barraza's district-wide e-mail soliciting applicants for the vacant position. Taken in the light most favorable to Green, however, the evidence would allow a reasonable jury to find that Barraza did not require a particularized application and was aware of Green's desire to coach.

The District also argues that Green cannot show that the District's proffered reason for failing to appoint him—his record of misconduct—was pretextual. Green contends that he was more qualified than the others for the coaching positions, due to his experience and certifications. He argues that the District ignored its own policy requiring that certified teachers be given preference over non-certified teachers and that all coaches have some training in coaching principles and sports first aid. The District contends that the policy was not a hard and fast rule and that Green's misconduct outweighed other considerations. As discussed above, however, Green has shown that there is a genuine factual dispute with respect to the genuineness of his alleged record of misconduct and, therefore, with respect to whether that was the actual reason for the District's actions. This, combined with the differential in experience and training

9

between Green and the individuals appointed instead of him, is sufficient to create a genuine factual dispute over whether the District's reasons for not appointing Green were pretextual. As a result, the District is not entitled to summary judgment on Green's age discrimination claim.

**2. Race discrimination**

Like age discrimination claims, race discrimination claims can be proven either directly or indirectly, using the burden-shifting approach outlined in *McDonnell-Douglas. See Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 779 (7th Cir. 2007). To establish a prima facie case of discrimination, Green must demonstrate that (1) he is a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) a similarly-situated individual outside the protected class was treated more favorably. *Atanus v. Perry*, 520 F.3d 662, 672-73 (7th Cir. 2008).

Again, the first and third elements are undisputed. Green is African-American, and he was passed over for coaching positions that would have increased his compensation. It is also undisputed that the men who were appointed to those positions instead, Hamilton and Knobloch, are both white.

The District's arguments in support of summary judgment on this claim track the arguments it marshaled against the age discrimination claim. The District contends that Green cannot establish a prima facie case because his record of misconduct prevents him from establishing the second and fourth elements and that his record likewise prevents him from proving pretext. For the reasons outlined above, Green has made a

showing sufficient to establish that genuine factual disputes exists on these points. The District is not entitled to summary judgment on Green's race discrimination claim.

**3.   Retaliation**

Claims for unlawful retaliation under Title VII can be proven using either the direct or indirect method of proof. *See Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Green proceeds only under the indirect method. Under the indirect method, Green must first establish that he (1) engaged in an activity protected under Title VII; (2) met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* If he succeeds, the burden shifts to the District to articulate a non-retaliatory reason for its actions. *Id.* If the District does so, the burden shifts back to Green to demonstrate that the proffered reason is pretextual. *Id.*

Green contends that the District retaliated against him in two different ways. First, he contends that the appointment of other, less-qualified individuals to coaching positions was retaliatory. Second, he contends that the District retaliated against him when it issued the notice to remedy and reassigned him to the position of in-school suspension teacher in November 2006.[1]

---

[1] In his complaint, Green alleges that a 2006 performance review was also an adverse employment action. In its motion for summary judgment, the District contends that the performance review did not constitute an adverse employment action because it did not change the terms and conditions of his employment. Green did not respond to that argument in his response. As a result, he has forfeited it. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings.").

11

Green has established a prima facie case of retaliation with respect to the denial of the coaching positions for essentially the same reasons he established prima facie cases of age and race discrimination. First, it is undisputed that Green fulfills the first element because he engaged in protected activity when he filed an EEOC charge in April 2005. Also, as discussed above, Green has at least shown that there exists a genuine factual dispute about the existence and validity of his record of coaching misconduct, the critical factor on the second and fourth elements of his prima facie case with respect to the coaching positions. Similarly, Green has produced evidence sufficient to allow a reasonable trier of fact to conclude that the alleged record of misconduct was engineered to obscure a retaliatory motive.

With respect to the November 2006 disciplinary actions, however, no reasonable jury could find that the District's proffered reasons for taking those disciplinary actions were a pretext for retaliation. The District contends that it issued the notice to remedy and reassigned Green to the position of in-school suspension teacher because it investigated several complaints of Green's inappropriate behavior and found those complaints to be credible. In the notice to remedy, the District stated that four separate complaints formed the basis for its action. Two of the complaints centered on incidents that occurred in October 2006, over ten months after Green filed his EEOC charge. The District issued the notice to remedy just a few weeks after it learned of the October 2006 complaints.

The District contends that Green failed to establish three elements of his prima facie case concerning the November disciplinary actions. Because the Court concludes that Green cannot establish that a similarly-situated employee was treated more

favorably, the Court need not determine whether he has established the remaining elements of a prima facie case.

Green has not attempted to show that another employee, one who was accused of similar misconduct but did not engage in protected activity, was not issued a notice to remedy. In contrast, the District produced evidence that it issued notices to remedy to two other employees, identified as C.R. and R.F. The District found that C.R. had pushed a student and that R.F. had sexually harassed a fellow teacher. Neither C.R. nor R.F. filed charges of discrimination before the District issued the notices. In October 2006, the District received complaints that Green had pushed a student and had sexually harassed a teacher. After investigating and interviewing Green about the incidents, the District found the complaints credible. Even though Green disputes the underlying charges, he does not contest that the District found the charges credible. Then the District issued Green the notice, just as it did with C.R. and R.F.. The District contends that this shows that it treated similarly-situated teachers who had not engaged in protected activity the same as it treated Green.

Given Green's failure to produce evidence of a similarly-situated employee, no reasonable jury could find that Green has established a prima facie case of retaliation. The same is true of Green's claim concerning his reassignment. Just as it did with Green, the District reassigned R.F. to the position of in-school suspension teacher following a finding that he sexually harassed another teacher. Green has not produced evidence that another employee who was found to have harassed a fellow employee was not reassigned. As a result, the District is entitled to summary judgment on Green's retaliation claim concerning the November 2006 disciplinary actions.

**Conclusion**

For the foregoing reasons, the Court grants the District's motion for summary judgment [docket no. 46] with respect to Count 3 to the extent Green challenges his November 2006 disciplinary actions but otherwise denies the motion. The Court dismisses as moot Green's motion to strike the District's Rule 56 statement [docket no. 59]; the material Green asks the Court to strike concerns only the claims on which the Court has denied summary judgment. The Court sets the case for a status hearing on February 23, 2009 at 9:30 a.m. for the purpose of setting a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 5, 2009